SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
CHARLES S. DONOVAN, Cal. Bar No. 103667
BRENNA E. MOORHEAD, Cal. Bar No. 233425
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone:   415-434-9100
Facsimile:   415-434-3947
Email:       cdonovan@sheppardmullin.com
             bmoorhead@sheppardmullin.com

Attorneys for Plaintiff APL Co. Pte. Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

APL CO. PTE. LTD.,

         Plaintiff,

   v.

KEMIRA WATER SOLUTIONS, INC.,
(formerly known as "Kemiron Companies"),
FAIRYLAND ENVITECH CO. LTD.,

         Defendants.

Case No. CV 09 3967 SC

**COMPLAINT**

Plaintiff alleges:

**PARTIES AND JURISDICTION**

1. This is an admiralty and maritime claim under 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

2. Plaintiff also claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §9601 et seq. Plaintiff's CERCLA claims are also within the Court's federal question under 28 U.S.C. § 1331.

3. Plaintiff's claims are all so related to each other that they form part of the same case or controversy under Article III of the U.S. Constitution. Thus, to the extent, if any, plaintiff's claims fall outside admiralty or federal

1  question jurisdiction, they are within the Court's supplemental jurisdiction under 28
2  U.S.C. § 1367(a).

3      4.    Plaintiff, APL Co. Pte. Ltd., is a Singapore corporation with its
4  principal place of business in Singapore. Plaintiff is qualified to do business in
5  California and maintains an office and place of business in Oakland, California.

6      5.    Defendant, Kemira Water Solutions, Inc. ("Kemira") was
7  formerly named "Kemiron Companies," and is, upon information and belief, a
8  Delaware corporation with its principal place of business in Florida.

9      6.    Defendant, Fairyland Envitech Co. Ltd. ("Fairyland") is, upon
10 information and belief, a company organized under the laws of a foreign nation with
11 its principal place of business in Taiwan, Republic of China.

## CLAIM FOR RELIEF

13     7.    Fairyland tendered to plaintiff two cargoes (the "Goods") of
14 ferrous chloride in Taiwan for shipment to California. The ferrous chloride was in
15 bags which Fairyland packed or caused to be packed into ocean cargo containers.

16     8.    Plaintiff, as "Carrier," issued two straight bills of lading (the
17 "Bills of Lading") to Fairyland, as "Shipper," and to Kemira, as "Consignee," of the
18 Goods.

19     9.    The first Bill of Lading, No. APLU451382861 issued September
20 30, 2006, covered 412 bags containing ferrous chloride crystal (the "First
21 Shipment"), which plaintiff loaded aboard the HYUNDAI INDEPENDENCE in
22 Kaohsiung, Taiwan.

23     10.    The second Bill of Lading, No. APLU401403279 issued October
24 17, 2006 covered 530 bags containing ferrous chloride crystal (the "Second
25 Shipment"), which plaintiff loaded aboard the APL SINGAPORE in Kaohsiung,
26 Taiwan.

27     11.    Under the terms of the Bills of Lading, plaintiff contracted to and
28 did in fact carry the Goods from Taiwan to California.

1    12.   At the time of tender to plaintiff, the Goods were in ocean-cargo containers. These were "Shipper-Packed Containers" under Clause 9 of each Bill of Lading.

13.   Clause 1 of each Bill of Lading defines "Merchant" to include "the Shipper, Consignee, Receiver, Holder of the Bill of Lading, Owner of the cargo or Person entitled to the possession of the cargo or having a present or future interest in the Goods," and states that "all . . . shall be jointly and severally liable to the Carrier . . .for the performance of the obligations of any of them under this Bill of Lading."

14.   Each defendant was, at some point before, at or after tender of the Goods to plaintiff for carriage, one or more of the following: (a) shipper; (b) consignee; (c) receiver; (d) holder of the bill of lading; (e) owner of the Goods; (f) person entitled to possession; or (g) holder of a present or future interest in the Goods.

15.   Upon information and belief, each defendant accepted the terms of the Bills of Lading. The allegations this paragraph contains are likely to have further evidentiary support after a reasonable opportunity for further investigation or discovery.

16.   Upon information and belief, Kemira contracted to purchase the Goods from Fairyland and expressly or impliedly authorized Fairyland to bind Kemira to the terms of the Bills of Lading.

17.   Each defendant is a "Merchant" under the Bills of Lading.

18.   Upon the First Shipment's arrival in California aboard the HYUNDAI INDEPENDENCE, plaintiff discovered the containers that contained the Goods were leaking and hazardous.

19.   Plaintiff notified the master of the APL SINGAPORE of the condition of the First Shipment and requested he inspect the Second Shipment, then

...

aboard his ship en route from Taiwan to California. Upon inspection, the master determined the Second Shipment also to be leaking and hazardous.

20. Plaintiff expended funds containing, assessing, cleaning, and removing the Goods.

21. Clause 19 of the Bill of Lading states "[n]o Goods which are or may become inflammable, explosive, corrosive, noxious, hazardous, dangerous or damaging. . . or which are or may become liable to damage any property whatsoever, shall be tendered to the Carrier for Carriage without its express consent in writing . . . ." By that Clause defendants also undertook that the Goods were "packed in a manner adequate to withstand the risk of Carriage having regard to their nature and in compliance with all laws or regulations which may be applicable during Carriage and handling." The Clause further obligates defendants to indemnify plaintiff when it states, "[w]hether or not the Merchant was aware of the nature of the Goods, the Merchant shall indemnify the Carrier against all claims, losses, damages, liabilities or expenses arising in consequence of the Carriage of such Goods."

22. Defendants breached Clauses 9 and 19 of the Bill of Lading and are jointly and severally liable for all plaintiff's resulting damages and expenses. Defendants are obligated to pay plaintiff's damages as a result of the indemnity obligations they undertook by agreeing to those Clauses.

23. Defendants shipped hazardous Goods, failed properly to stow the Goods in the ocean cargo containers, and failed to provide notice to APL as required by law, all of which constituted negligence on defendants' part.

24. Plaintiff incurred response costs as a result of the leaking of hazardous materials from the bags that contained the Goods. Each bag in which Fairyland packed the Goods was a "facility" within the meaning of 42 U.S.C. § 9607(a)(1). Upon information and belief, defendants each owned, operated or

W02-WEST:5DC\401740205.4

controlled the facilities from which leakage occurred. Defendants are therefore liable under CERCLA to contribute to plaintiff for its response costs.

25. Plaintiff's damages exceed US$5 million.

**PRAYER**

Plaintiff prays for judgment against defendants jointly and severally for:

    (a)    damages in excess of US$5 million;

    (b)    interest, costs and attorneys' fees; and

    (c)    other and further relief in plaintiff's favor as the Court deems just.

DATED: August 27, 2009.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By _____
Charles S. Donovan
Attorneys for Plaintiff, APL Co. Pte. Ltd.

W02-WEST:5DC\401740205.4

COMPLAINT