IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APL CO. PTE. LTD., ) | Case No. 09-3967 SC |
| ) | |
| Plaintiff, ) | ORDER DENYING MOTION TO |
| v. ) | DISMISS |
| ) | |
| KEMIRA WATER SOLUTIONS, INC. ) | |
| (formally known as "Kemiron ) | |
| Companies"), FAIRYLAND ENVITECH ) | |
| CO. LTD., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I. INTRODUCTION

A carrier, APL Co. PTE. LTD. ("APL"), has brought this suit against a shipper, Fairyland Envitech Co. LTD. ("Fairyland"), and the intended recipient/purchaser of the shipment, Kemira Water Solutions, Inc. ("Kemira").[1]  See Docket No. 1 ("Compl."). Kemira has filed a Motion to Dismiss, on the grounds that venue is improper in this district. Docket No. 17 ("Motion"). The Motion is fully briefed. Docket Nos. 23 ("Opp'n"), 24 ("Reply"). Having considered the papers filed by both parties, the Court concludes that this matter is appropriate for determination without oral argument. For the reasons stated below, the Court DENIES Kemira's Motion to Dismiss.

---

[1] Fairyland has not participated in this Motion, nor has it appeared in these proceedings.

**II.   BACKGROUND**

APL is a Singapore corporation with its principal place of business in Singapore. Compl. ¶ 4. Kemira is a Delaware corporation with its principal place of business in Florida. Id. ¶ 5. Fairyland is alleged to be a company organized under the laws of Taiwan, which is also its principal place of business. Id. ¶ 6.

APL alleges that Kemira contracted to purchase two cargoes of ferrous chloride from Fairyland. Id. ¶¶ 7, 16. According to APL, Fairyland tendered these cargoes to APL in late 2006, with the ferrous chloride packed into bags which Fairyland had packed or caused to be packed in ocean cargo containers. Id. ¶ 7. According to Plaintiff, it took the cargoes as Carrier under two Bills of Lading, under which Fairyland was the Shipper and Kemira was the Consignee. Id. ¶¶ 8-10. These Bills of Lading state that both the Shipper and Consignee (which are both grouped, together with Receivers and Holders, under the title "Merchants") "shall be jointly and severally liable to the Carrier . . . for the performance of the obligations of any of them under this Bill of Lading." Id. ¶ 13. They also state that Merchants "shall indemnify the Carrier against all claims, losses, damages, liabilities, or expenses arising in consequences of the Carriage of such Goods." Id. ¶ 21.

After the first cargo arrived in California, APL discovered that the containers holding the cargoes "were leaking and hazardous." Id. ¶¶ 18-19. APL spent money "containing, assessing, cleaning, and removing the goods." Id. ¶ 20. APL has brought this suit against Kemira and Fairyland in the Northern District of California, and is apparently seeking to recover under the Bills of

2

Lading as contracts, and under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq.

Kemira seeks to invoke a provision in the Terms and Conditions of the Bills of Lading ("Terms") that gives "Merchants" the right to "refer any claim or dispute to the United States District Court for the Southern District of New York." Huber Decl.[2] Ex. B ("Terms") § 28(iii). Kemira claims that this provision allows it to render the Northern District of California an improper venue. The relevant portions of the Terms and Conditions read as follows:

> 28. Law and Jurisdiction
> . . .
> ii. Jurisdiction
> All disputes relating to this Bill of Lading shall be determined by the Courts of Singapore to the exclusion of the jurisdiction of the courts of any other country provided always that the Carrier may in its absolute and sole discretion invoke or voluntarily submit to the jurisdiction of the Courts of any other country which, but for the terms of this Bill of Lading, could properly assume jurisdiction to hear and determine such disputes, but shall not constitute a waiver of the terms of this provision in any other instance.
> iii. Notwithstanding Clause 28 i)[3] and ii), if Carriage includes Carriage to, from or through a port in the United States of America, the Merchant may refer any claim or dispute to the United States District Court for the Southern District of New York in accordance with the laws of the United States of America.

Id. § 28.

---

[2] Marisa G. Huber, Counsel for Kemira, filed a declaration in support of the Motion. Docket No. 18.

[3] Section 28(i) of the Bills of Lading state that the laws of Singapore govern the terms, conditions, and interpretation of the Bills of Lading.

3

## III. LEGAL STANDARD

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for improper venue.  This is the proper motion by which a defendant may seek to enforce a forum selection clause.  Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).  The Court need not accept the pleadings as true, and may consider facts outside the pleadings.  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2003).  However, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."  Id. at 1138-40.  "Federal law governs the validity of a forum selection clause."  Argueta, 87 F.3d at 324.[4]  "A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which we will conclude the clause is unenforceable."  Doe 1 v. AOL LLC, 552 F.3d 1077, 1083 (9th Cir. 2009).

If this Court concludes that venue in this district is improper, then it "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been filed."  28 U.S.C. § 1406(a).

## IV. DISCUSSION

### A. Kemira May Invoke Section 28(iii) Even Though It Is Contesting Its Status as a "Merchant"

APL contends that Kemira is attempting to "have its cake and

---

[4] Neither party has urged the application of Singaporean law to the forum-selection provision at issue.

4

1  eat it too," by invoking a right granted to "Merchants" under
2  section 28(iii) of the Terms, while maintaining the defense that it
3  was not a "Merchant" when it comes to adjudication of the merits of
4  the contract.  Opp'n at 3-4.  Kemira argues that it may waive the
5  defense that it is not a Merchant under the contracts for the
6  limited purpose of invoking section 28(iii) and invoking the forum-
7  selection provision.  Reply at 4-5.
8      Because APL is alleging that Kemira is a Merchant, Kemira and
9  this Court may rely on this allegation to conclude that Kemira has
10 standing to "refer" this dispute to the Southern District of New
11 York.  In resolving this Motion, this Court should not be required
12 to reach the merits of the dispute, and resolve at this preliminary
13 stage the question of whether or not Kemira is a Merchant.
14     This Court's conclusion is supported by Marra v. Papandreou,
15 in which a panel for the D.C. Circuit considered the question of
16 whether the country of Greece was barred from invoking the forum-
17 selection provision of a contract that it claimed had been revoked,
18 and from which it claimed immunity under the Foreign Sovereign
19 Immunities Act ("FSIA").  216 F.3d 1119 (D.C. Cir. 2000).  The
20 panel acknowledged that a court considering a forum-selection
21 provision "must also address issues that would be conventionally
22 understood as going to the 'merits' of a contract dispute."  Id. at
23 1122.  However, it also observed that a forum-selection provision
24 "is separate from the obligations the parties owe to each other
25 under the remainder of the contract.  Thus when a court determines
26 that a forum-selection clause is enforceable, it is not making an
27 assumption of law-declaring power vis-a-vis other provisions of the
28 contract."  Id. at 1123 (internal quotation marks and citation

omitted). Greece therefore argued that its invocation of the forum-selection provision was "a waiver of its FSIA defense with respect to the clause" only, and the panel agreed. Id. ("If the Greek government were sued by Marra for breach of two different contracts, it certainly would have the prerogative to waive a sovereign immunity defense with respect to one of the contracts and invoke that defense for the other.").

APL argues that this situation is different from Marra because Kemira is arguing (or rather, can be expected to argue) that it was not even a party to the Bills of Lading. Opp'n at 3. This is a distinction in substantive defenses, and this Court does not find the distinction to be significant.[5] It would be impractical to attempt to design a test to determine which substantive defenses constitute waivers of forum-selection provisions and which substantive defenses permit defendants to retain their rights under such clauses. Assuming that the allegations in the Complaint are correct, and that APL can recover from Kemira at all, Kemira is a Merchant and has therefore been granted the right to "refer" disputes to the Southern District of New York. Whether or not Kemira is a Merchant under the contract is an as-of-yet undetermined question that should be adjudicated by a court in which venue is proper.

///
///

---

[5] Indeed, a defendant who claims that he was not a party to a forum selection provision is on no firmer footing than a party who claims to have revoked the contract in which a forum selection provision is found (as in Marra). In either instance, the plaintiff will eventually be required to establish that the contract is valid and enforceable to prevail.

6

**B. Section 28(iii) Permits Merchants to Set the Southern District of New York as the Exclusive Jurisdiction**

The outcome of this Motion will depend upon the Court's interpretation of section 28(iii) of the Terms. According to Kemira, section 28(iii) is a valid and enforceable forum selection clause, and by its terms, "APL's complaint should be dismissed once Kemira refers the case to New York." Mot. at 5. Its Motion therefore rests on the proposition that section 28(iii) is in fact an exclusive forum selection clause that conditionally (upon "reference" by a Merchant) mandates jurisdiction in the Southern District of New York.

APL contends that the clause is merely permissive, and not mandatory. "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995). While an exclusive forum-selection clause will give defendants a basis for objecting to venue in any other jurisdiction, a permissive forum-selection clause does not prevent suits from going forward outside of the selected forum. See id. at 1036-37.

When read in isolation, section 28(iii) is ambiguous. This provision purports to give Merchants the right to "refer any claim or dispute" to the Southern District of New York. Terms § 28(iii). APL acknowledges that, at the very least, this provision would allow a Merchant the right to bring suit against APL before a court in the Southern District of New York, and that APL would be powerless to contest personal jurisdiction in such cases. See N. Cal. Dist. Council of Laborers, 69 F.3d at 1036-37

7

(recognizing that by agreeing to forum-selection provision, party may consent to jurisdiction in selected forum). In other words, this is at least a permissive forum selection provision. APL urges that section 28(iii) be read in conjunction with the preceding provision, section 28(ii), which explicitly sets jurisdiction in the courts of Singapore "to the exclusion of the jurisdiction of the courts of any other country," and which further allows the Carrier (i.e., APL) to bring suit or submit to jurisdiction in any court of any country that it wishes. Terms § 28(ii). APL urges this Court to read section 28(iii) narrowly, as an exception to section 28(ii) that merely allows Merchants to bring suit in New York, in lieu of Singapore, so long as the Bill of Lading involves carriage to, from, or through the United States.

The question is therefore whether the word "refer" permits a Merchant to simply "bring," "file," or "submit" "any claim or dispute" in New York, or whether Merchants may also "refer" a case that has been brought against that Merchant, after it has already been filed by APL in an otherwise-competent jurisdiction. The Court finds that the narrow reading urged by APL is inconsistent with the language that allows Merchants to "refer any claim or dispute" to the Southern District of New York. Id. Given the broad scope of this language, the Court sees no reason why the phrase "any claim or dispute" should not be read to include suits that have already been filed. It would have been simple to craft language that clearly and explicitly gives the Southern District of New York only permissive jurisdiction over APL, or that provides Merchants with more limited rights to "file" or "bring

8

claims" or "submit disputes" in that district.  However, APL chose to draft the section using the far more ambiguous term "refer," with broad reference to "any claim or dispute," without limitation.  Terms § 28(iii).

"[W]here language is ambiguous the court should construe the language against the drafter of the contract." <u>Hunt Wesson Foods, Inc. v. Supreme Oil Co.</u>, 817 F.2d 75, 78 (9th Cir. 1987) (discussing forum selection clause).  While the Court finds APL's narrow reading of the provision to be reasonable, it is not so persuasive as to convince the Court that Kemira's broader reading is unreasonable.  The provision is, at best, ambiguous as to the Merchant's right to "refer" an existing lawsuit to the Southern District of New York.

The Court therefore finds that section 28(iii) gives any Merchant the right to object to venue in any suit not brought in the Southern District of New York, by "referring" the dispute to that district.  This is functionally equivalent to an exclusive forum-selection provision.  The fact that the Merchant must actively "refer" a case to the Southern District of New York is of no import.  Any exclusive forum-selection provision -- no matter how unconditionally worded -- is waivable, and therefore requires an affirmative act before venue outside of the selected forum is rendered improper.  Put otherwise, an exclusive forum-selection provision will be of no effect until it is invoked, but once invoked, it renders all venues except the selected venue improper.[6]  The same is true with section 28(iii): Once a Merchant

---

[6] There is one respect in which section 28(iii) may differ from a more traditional exclusive forum-selection provision (e.g., "any

exercises its right to "refer" a dispute to the Southern District of New York, that district becomes the exclusive forum in which that dispute can be heard.

### C.  Whether Section 28(iii) Should Be Enforced

Once this Court has established the existence of a valid forum-selection clause, "the party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'"  Murphy, 362 F.3d at 1140 (quoting Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).  APL argues that the interests of justice would be better served by maintaining this suit in the Northern District of California.  Opp'n at 10-12.  APL also argues that this Court should not dismiss or transfer this suit because there is no evidence that APL could assert its claims against either Kemira or APL in the Southern District of New York, and therefore that district is an "improper venue."  Opp'n at 9-10.

With regard to Kemira, the argument that the Southern District of New York may lack personal jurisdiction is specious.  Any defendant may waive any defense based on personal jurisdiction.  Ainbinder v. Potter, 282 F. Supp. 2d 180, 185 (S.D.N.Y. 2003).  There is no question that Kemira, having "referred" this suit to the Southern District of New York, has waived any objection that

---

dispute shall be determined by the courts of Singapore"):  It is not clear that section 28(iii) should be construed as consent by a Merchant to venue in, or the jurisdiction of, the Southern District of New York, absent a referral by that Merchant.  This raises an issue as to whether the Southern District of New York would be a proper forum for the claims against Fairyland, which has not exercised its right to "refer" this dispute to New York.  This concern is addressed in the next section.

10

it might have to jurisdiction in that forum.

Whether a district court in the Southern District of New York would be willing to exercise jurisdiction over Fairyland is a much closer question.  Arguably, Fairyland has consented to jurisdiction in the Southern District of New York, by agreeing to the Terms of the Bills of Lading, which give any Merchant the right to "refer" cases to that jurisdiction.  However, Fairyland has not asserted its right to "refer" this suit to the Southern District of New York.  Given the ambiguous nature of the provision, this Court cannot presume that a court in the Southern District of New York would assert jurisdiction over Fairyland, by construing its acceptance of the ambiguous provision as consent to be sued in that forum.  In particular, this Court is concerned that Fairyland has not purposefully directed any action towards the Southern District of New York, or availed itself of the benefits of doing business there, merely by accepting a limited option to "refer" disputes to New York.  See Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001).  Nor can the Court conclude, on the basis of the ambiguous provision, that Fairyland could have reasonably anticipated being hailed into court there when another "Merchant" chose to "refer" a dispute in which Fairyland was a codefendant.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).  Fairyland did not draft the provision, and it should not be held hostage to its ambiguities.  Consequently, it is not clear that jurisdiction over Fairyland based on the Bills of Lading alone would pass constitutional muster.

Because Fairyland has not yet participated in these

proceedings,[7] the Court is aware of no facts that would, independently of the Terms of the Bills of Lading, provide that district with jurisdiction over Fairyland. Although APL raises this concern in its Opposition, Opp'n at 10, Kemira's Reply is completely silent as to whether personal jurisdiction over Fairyland would exist in New York. The Court finds no basis for concluding that the Southern District of New York would be able to assert personal jurisdiction over Fairyland.[8]

The Northern District of California remains a possible venue for APL's claims against Fairyland. In this circumstance, where venue may be improper as to only one defendant, "the interests of justice require the trial court to consider the possibility of transfer or dismissal of improper parties under F.R.Civ.P. 21 and 28 U.S.C. § 1406(a)." <u>Anrig v. Ringsby United</u>, 603 F.2d 1319, 1325 (9th Cir. 1978) (considering case in which venue under 28 U.S.C. § 1391 was improper as to only certain defendants). However, the claims against both Kemira and Fairyland are deeply intertwined, and relate to exactly the same facts. The suit

---

[7] Kemira claims that Fairyland has not been properly served. Reply at 9 n.3. However, APL has averred that Fairyland was properly served when APL caused the Complaint, Summons, and related documents to be mailed to Fairyland "through the Clerk of the Northern District California on November 4, 2009" in accordance with Rule 4(f)(2)(C)(ii) of the Federal Rules of Civil Procedure. <u>See</u> Docket No. 9 ("APL Case Management Statement") at 2. No proof of service has been filed with this Court.

[8] Although APL bears the burden of showing why enforcement of the forum-selection provision would be improper, under these circumstances, it is sufficient that APL has raised legitimate concerns related to obtaining personal jurisdiction over Fairyland in New York, which Kemira has completely ignored in its Reply. This Court will not place on APL the onerous burden of proving that the courts of the Southern District of New York would actually lack jurisdiction over Fairyland, which may well rest upon facts outside of its possession.

12

against Fairyland and Kemira is one in the same, and to allow the action against Kemira to go forward in New York while the same suit involving the same facts continues against Fairyland in this district would be inefficient, and would run the risk of duplicative litigation and potentially inconsistent judgments. This Court concludes that severance of this action would not be fair or reasonable.[9]

This Court therefore declines to enforce section 28(iii) at this time. Transfer to the Southern District of New York would be unreasonable where it is not clear that that district would have jurisdiction over an important party to this dispute, and where separate proceedings against each defendant would be inefficient or unduly burdensome. Moreover, because of the jurisdictional concerns outlined above, this Court lacks the authority to transfer this suit to the Southern District of New York under 28 U.S.C. § 1406, because it is not clear that the Southern District of New York is a "district or division in which [this suit] could have been brought." 28 U.S.C. § 1406(a). Dismissal of this suit, with leave to refile against Defendants in the Southern District of New York, would be similarly unreasonable. This Court must therefore DENY Kemira's Motion.

///

///

---

[9] APL also argues that, because of the lack of jurisdiction in New York, Kemira's referral of this suit to New York is not "in accordance with the laws of the United States," as required by section 28(iii). This clause appears to broadly prevent "referral" of a dispute to New York when the courts of that forum could not lawfully consider the dispute. This Court agrees that this clause serves as an independent basis for maintaining the dispute in California at present.

13

**V.   CONCLUSION**

For the reasons stated above, Kemira's Motion to Dismiss is DENIED.

In addition, the Court notes that APL has not filed with this Court a proof of service as to Defendant Fairyland within the 120-day limit set out by Rule 4(m) of the Federal Rules of Civil procedure.  APL is therefore ORDERED to fully explain the status of its attempt to serve Fairyland, and to show good cause for its failure to complete service within the contemplated time period. It may do so in its Case Management Statement for the upcoming March 19, 2010 Case Management Conference, which is due no later than March 12, 2010.  The March 19, 2010 Case Management Conference, set for 10:00 a.m. in Courtroom 1, on the 17th floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, remains on calendar.

IT IS SO ORDERED.

Dated: March 10, 2010

UNITED STATES DISTRICT JUDGE

14